**TEXAS DEPARTMENT OF MENTAL HEALTH & MENTAL RETARDATION and the Fort Worth State School, Appellant,**

v.

**Henry WADE, District Attorney, Appellee.**

No. 05–82–01032–CV.

Court of Appeals of Texas, Dallas.

May 11, 1983.

Mary K. Conroy, Austin, for appellant.

Renea Hicks, Amicus Curiae, Austin, for Carrie Mae Roberts.

Maridell Templeton, Asst. Dist. Atty., Bertran T. Bader, III, Ad Litem, Dallas, for appellee.

Before GUITTARD, C.J., and STOREY and GUILLOT, JJ.

STOREY, Justice.

A District Court of Dallas County sitting as a juvenile court, on application of the district attorney, temporarily enjoined the Fort Worth State School from allowing Tony Cordell Davis to leave the premises of that institution at any time, primarily because the court found that the school acted wrongfully in furloughing the child, who had repeatedly committed sexual offenses while on furlough. The Attorney General appeals on behalf of the Texas Department of Mental Health and Mental Retardation, claiming that the district court lacked subject matter jurisdiction to impose a temporary injunction on the department and had interfered with the authority of the director of a residential care facility under its control to grant furloughs under the Mentally Retarded Persons Act, Tex.Rev.Civ.Stat. Ann. art. 5547–300 (Vernon Supp.1982–1983). We affirm the interlocutory action of the district court.

In 1979, 1980, and 1981, the district attorney filed four petitions to find the child delinquent. After the second petition, the child was found mentally retarded and was committed to Fort Worth State School, a State facility. The district attorney took a nonsuit after the third petition because the child was already in a State institution. While on furlough from that facility, the child committed another offense and the fourth petition was filed. The child's attorney interposed a plea in bar based upon the former adjudication that the child was a mentally retarded person. The district court entered judgment in that action permanently enjoining the school from releasing or furloughing the child without fifteen days' written notice to the district court. Four months later the district attorney filed a "Motion to Show Cause Why Tony Cordell Davis Should Not Be Denied Home Visits." The district attorney and the school entered into an agreed judgment enjoining the school from permitting the child to visit his home without prior consent from the district attorney and then only with supervision of the child in transit to and from his home. After this agreed judgment the child committed five more offenses while on two weekend furloughs. The district attorney then filed another very similar "motion to show cause," which we treat as an application for a temporary injunction requiring the school to confine the child to its facilities pending a final hearing. The evidence presented at the hearing on this motion confirmed that officials of the school had knowledge of the offenses, and testimony of the school superintendent indicated that it was reasonably probable the child would nevertheless be granted furloughs in the future. Moreover, the superintendent disavowed responsibility for the child's supervision while he was on furlough to his home. The court granted the relief sought and the Attorney General attacks the court's order on this interlocutory appeal.

The Attorney General contends that the district court did not have jurisdiction to temporarily enjoin the school from allowing the child "to leave the campus or facilities of [the school], and from allowing Tony Cordell Davis to visit Dallas County ... for any reason." The Attorney General reasons that the Family Code, Tex.Fam.Code Ann. § 55.03(d) (Vernon 1975), stays the juvenile proceedings once the child is committed to a residential care facility for the mentally retarded pursuant to the Mentally Retarded Persons Act, Tex.Rev.Civ.Stat. Ann. 5547–300 (Vernon Supp.1982–1983).

Concededly, the Family Code does stay *juvenile delinquency* proceedings, but those are the only proceedings held in abeyance when the child is found to be mentally retarded and committed to a residential care facility. The Mentally Retarded Persons Act provides for several situations in which the jurisdiction of the courts may be invoked to adjudicate the rights of the "resident" or others in relation to him, including an action in district court commenced by the district attorney or the Attorney General to enjoin violations of the act or of any rules promulgated under it. *Id.* § 65. Section 65 plainly authorizes a district court to grant either a temporary or permanent injunction against violation of the act. Therefore, if the district attorney shows a probable right to relief under section 65,

that is, a violation of the act and a probable irreparable harm if the status quo is not maintained pending a "final" remedy, then he has a right to a temporary injunction.

We are persuaded that, here, a violation of the act has occurred. Section 58 of the act places responsibility on the department, in this case the superintendent of the school, to assure that all mentally retarded persons are given quality care, treatment, education, and rehabilitation "appropriate to their individual needs." Tex.Rev.Civ. Stat.Ann. art. 5547–300, § 58 (Vernon Supp.1982–1983). Elsewhere, the act grants the mentally retarded the right to live in the least restrictive habitation setting "appropriate to his individual needs." *Id.* §§ 7 & 15. "Least restrictive" is defined as a facility which is the least confining "reasonably and humanely appropriate to the individual's needs." *Id.* § 3(23). A "least restrictive" environment includes the right to live alone, in a group home, with a family, and in a supervised, protective environment. *Id.* § 7. Recognizing the right and the limitation according to need, the superintendent is given the discretion to grant or deny a resident a leave of absence or furlough. *Id.* § 45.

■ The facts here presented demonstrate that the superintendent has violated section 45 by exercising his discretion in favor of continual furloughs when the individual needs of the resident under his care dictated a contrary decision. The record reveals that the school entered into a settlement agreement, in which it agreed to deny furloughs except with consent of local authority and then only if the child were under constant supervision. A judgment was entered incorporating the injunctive features of this agreement. The record shows that after entry of the judgment, the child was permitted further unsupervised furloughs; he was accused of committing five additional sex-related offenses in Dallas County; the school was aware of these instances; and, despite its awareness, furloughs would likely be granted in the future. We conclude that a violation of the act has occurred which authorized the district attorney to seek and the court to grant temporary injunctive relief.

The jurisdictional question ends here unless the Attorney General is deemed to have raised a constitutional objection to the authority conferred on the district court by section 65 of the act. Because jurisdictional questions are not ordinarily waivable at any stage of the proceedings, we construe the Attorney General's second point of error as a challenge to section 65. In this point of error the Attorney General asserts that the trial court did not have authority to interfere with the affairs of the department or the school. Since the Attorney General apparently ignored the authority conferred by section 65 of the act and because he raised the question of constitutional authority at oral argument, we deem this point of error to be a challenge to the legislature's grant of authority to the district court to issue injunctions against a department of the executive branch. Thus the only remaining question presented is whether the district court had the power to grant a temporary injunction to preserve the status quo pending a trial on the merits.

■ Generally, an injunction will not lie against a public official to regulate the manner and method of performance of official duties, *Steele v. Winningham,* 128 S.W.2d 454, 457 (Tex.Civ.App.—Waco 1939, no writ), unless the action of the official is wrongful and will cause irreparable injury. *Commissioners Court v. Fullerton,* 596 S.W.2d 572, 578, 579 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Godley v. Duval County,* 361 S.W.2d 629, 630 (Tex.Civ.App.—San Antonio 1962, no writ); *Marion County v. Perkins Bros. Co.,* 171 S.W. 789 (Tex.Civ.App.—Texarkana 1914, no writ). A temporary injunction against public officials may be obtained to preserve the status quo pending a trial on the merits upon showing a probable right to recover for the wrongful action of the public official and probable, immediate and irreparable harm. *League City v. Flora & Sons,* 388 S.W.2d 748 (Tex.Civ.App.—Houston 1965, no writ). On the other hand, the temporary injunction "should not be used to usurp the

prerogatives and hamper the different branches of government in the exercise of their constitutional functions." *City of San Antonio v. Schutte,* 246 S.W. 413, 414 (Tex. Civ.App.—San Antonio 1922, no writ).

The pivotal question is whether the temporary injunction regulates the manner and method of the school's performance of its statutory duties or enforces compliance with the act. We conclude it had the latter purpose and effect because, although the court mandated a specific course of action, this was the only means of preventing harm to the child and to potential victims of his actions under the circumstances here presented. The interference with the school is only temporary and appears necessary to protect the best interest and welfare of the child—the primary concern of the act. Further criminal behavior would certainly not be in the child's best interest.

■ Just as the State may enjoin the ongoing commission of a crime, *Super X Drugs v. State,* 505 S.W.2d 333 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ), the State should likewise be able to enjoin the actions of a public official that facilitate the repeated violation of criminal statutes when that official action is contrary to the statute under which the official acts. This is especially true when the injunction is only temporary. See *Godley,* 361 S.W.2d at 630. We conclude that the district attorney has shown a probable right to prevail in this suit based on the actions of the child while on furlough that constitute a continuing threat to himself and others. The record reflects that the school wrongfully ignored this threat by granting furloughs, even after entering into an agreed judgment regarding the supervision of the child on furloughs and consent from the district attorney in advance of these furloughs.

We have concluded that the district attorney has shown a probable right to recovery under the act for wrongful official action.

Recognizing the public policy of the State to encourage the fullest social development of mentally retarded persons and, at the same time, the possibility that some mentally retarded persons may represent a substantial risk of injury to themselves or others, the act provides for a variety of remedies. These include, among others, a permanent injunction enforcing the act, reviewable administrative grievance proceedings, placement in "home-living situations" combined with "habilitative" treatment, a more restrictive "long-term placement" in a residential care facility and transfer to a mental hospital. Tex.Rev.Civ.Stat.Ann. art. 5547–300, §§ 2(b), 7, 11, 16, 46, 65 (Vernon Supp.1982–1983).

Although no specific permanent relief was requested in this case, the district attorney has shown a probable right to some relief. Following trial on the merits, this relief need not necessarily result in a permanent injunction, but instead might result in other means of care and treatment provided in the act.

■ We have additionally concluded that the district attorney has proven a threat of irreparable harm if the temporary relief sought is not afforded. This is so because the child's demonstrated propensity to commit sexual offenses represents a continuing threat to himself as well as others. In view of the proof that the school will not supervise the child adequately when he leaves the premises for visits, it is necessary to restrict those visits until an ultimate remedy is afforded the district attorney who represents the citizens of Texas, including the potential victims of the child's offenses.[1]

Affirmed.

---

1. We note that this interlocutory appeal was entirely unnecessary because the ultimate merits of the case could have been determined in less time than was consumed by this interlocutory appeal. The Supreme Court and this court have previously condemned the practice of in-terlocutory appeals. This practice is particularly inappropriate when the welfare of a disturbed child is concerned. *Cf. Irving Bank & Trust Co. v. Second Land Corp.,* 544 S.W.2d 684, 689 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.) (sale of land).