OPINION DISSENTING FROM DENIAL OF MOTION FOR REHEARING
Rehearing denied.
Opinion by
Justice FITZGERALD.
I respectfully dissent from the decision to deny the motion for rehearing filed by the City of Dallas.
The majority reverses the judgment in favor of the City for two reasons. First, the majority holds that section 54.017 of the Local Government Code does not authorize an award of civil penalties for violations of the ordinances in question. Second, the majority holds that the City introduced insufficient evidence of an essential element of its claim for civil penalties — specifically, actual notice to appellant of the ordinances in question. After reviewing the City’s motion for rehearing and appellant’s response, and after further review of the briefs, I am convinced the majority’s holdings are erroneous for the reasons explained below.
Section 54.017
I would conclude that appellant did not adequately brief the contention that section 54.017 of the Local Government Code does not authorize civil penalties for violations of the ordinances at issue in this case. Accordingly, we should not have addressed the argument. In one section of its opening brief, appellant argued that the evidence was insufficient to prove that appellant was actually notified of the provisions of the ordinances at issue. Within that section of its brief, appellant includes a single sentence challenging the applicability of section 54.017: “Tex. Local Gov’t Code § 54.017 relates to health and safety code violations and cannot provide the City with a basis to recover per diem civil penalties.” Appellant cites a single authority in support, a Texas attorney general opinion letter. After that, appellant’s entire argument is about the sufficiency of the evidence. In my view, appellant’s one-sentence denial that section 54.017 applied was insufficient to present the argument for appellate review. See Tex.R.App. P. 38.1(h); see also In re Estate of Miller, 243 S.W.3d 831, 840 (Tex.App.-Dallas 2008, no pet.) (issue waived because appellant did not analyze legal authority and made “no suggested application of it to the facts”). Appellant expanded on its argument and cited Hollingsworth v. City of Dallas, 931 S.W.2d 699 (Tex.App.-Dallas 1996, writ denied), for the first time in its reply brief. Arguments presented for the first time in a reply brief are waived. Dallas Cnty. v. Gonzales, 183 S.W.3d 94, 104 (TexApp.-Dallas 2006, pet. denied). Because appellant did not adequately present its argument in its principal brief, I would not consider the argument even though appellant presented it more fully in its reply brief.
On the merits, I reject the majority’s conclusion that section 54.017 authorizes civil penalties only for violations of “health or safety” ordinances, for the simple reason that section 54.017 contains no such *303 limitation. Chapter 54 of the Local Government Code is entitled “Enforcement of Municipal Ordinances.” Subchapter B of Chapter 54, comprising sections 54.012 through 54.019, is entitled “Municipal Health and Safety Ordinances.” Section 54.012 provides that a municipality may bring a civil action for the enforcement of several kinds of ordinances, including an ordinance “for zoning that provides for the use of land or classifies a parcel of land according to the municipality’s district classification scheme.” Tex. Loo. Gov’t Code Ann. § 54.012(3) (West 2008). The remaining provisions of Subchapter B govern the civil actions authorized by section 54.012. Among them is section 54.017, entitled “Civil Penalty.” Id. § 54.017. That section provides that a municipality may recover a civil penalty if it proves (1) that the defendant was actually notified of the provisions of “the ordinance,” and (2) that the defendant violated the ordinance after receiving notice of “the ordinance provisions.” Id. § 54.017(a). Given the structure of Subchapter B as a whole, the phrase “the ordinance” in section 54.017 must mean any ordinance of a type listed in section 54.012. It is undisputed that the ordinances involved in this case are zoning ordinances within the meaning of section 54.012(3), so we should grant the City’s motion for rehearing and hold that the ordinances involved in this case will support civil penalties under section 54.017.
The majority characterizes our decision in Hollingsworth as holding that “the enforcement provisions of subchapter B do not apply to general zoning ordinances regulating the use of land.” I do not read Hollingsworth so broadly. In that case, the City of Dallas sought and obtained an injunction against the Hollingsworths to prevent them from operating a pawnshop in an area where zoning ordinances did not permit pawnshops to operate. Hollingsworth, 931 S.W.2d at 700-02. The Hollingsworths attacked the injunction on appeal, arguing (1) that the City had to satisfy section 54.016 and (2) that the City had introduced no evidence of a “substantial danger of injury or an adverse health impact to any person or to the property of any person other than the defendant.” See Tex. Loo. Gov’t Code Ann. § 54.016(a). We rejected the Hollingsworths’ argument, holding that the City could obtain injunctive relief under section 211.012 of the Local Government Code, which did not require proof of the additional element required by section 54.016. Hollingsworth, 931 S.W.2d at 702-03. We concluded that section 211.012 applied to “ordinances regulating the use of land” and that section 54.016 applied “to other types of ordinances not at issue here” without explaining what ordinances section 54.016 would apply to. Id. at 703. Although the logic of Hollingsworth is not entirely clear, I would conclude that Hollingsworth’& holding was limited to harmonizing sections 211.012 and 54.016, and that we did not purport to address the scope of Chapter 54, Subchapter B as a whole, or section 54.017 in particular. In any event, we should not interpret Hollingsworth to read section 54.012(3) out of the statute.
Finally, I disagree that the City made any fatal concessions in its appellate brief. As the City points out, Subchapter B as a whole is entitled “Municipal Health and Safety Ordinances,” suggesting that the legislature considered all the categories of ordinances listed in section 54.012 to be “municipal health and safety ordinances.” Consistent with this interpretation of the statutory scheme, the City’s appellate brief contained remarks such as “section 54.017 provides the City with a basis to recover per diem civil penalties for violation of a zoning ordinance, which is a health and safety matter.” The majority misconstrues the City’s point when the majority says that the City conceded that section *304 54.017 provides civil penalties only for violations of ordinances that regulate health or safety matters. The City’s point was that all ordinances of a kind listed in section 54.012 are “health and safety ordinances” governed by Subchapter B and enforceable under section 54.017 — and I agree.
Accordingly, I would hold that the City could recover civil penalties under section 54.017 for violations of the zoning ordinances at issue in this case.
Actual Notice
The majority holds in the alternative that the City adduced no evidence of the essential element of actual notice under section 54.017. I disagree.
Section 54.017(a)(1) required the City to prove that appellant “was actually notified of the provisions of the ordinance” appellant violated. See Tex. Loc. Gov’t Code Ann. § 54.017(a)(1). Section 54.017(a)(2) required the City to prove that, after receiving notice, appellant “committed acts in violation of the ordinance or failed to take action necessary for compliance with the ordinance.” See id. § 54.017(a)(2). The elements of section 54.017 were submitted to the jury in Question No. 11:
Question No, 11.
Did TCI West End violate the provisions of Ordinance No. 21391, as amended by Ordinance No. 22158, which provides that a person may not demolish a structure within the West End Historic District without first obtaining approval of the Landmark Commission of the City of Dallas?
To answer “Yes" to this question, you must find all of the following:
(a) TCI West End, Inc. was the owner of the real property where the MKT freight Station was located at the time of the violation;
(b) TCI West End, Inc. was actually notified of the foregoing provisions of Ordinance No. 21391, as amended by Ordinance No. 22158; and
(c) Thereafter TCI Wesl End, Inc. committed acts in violation of these provisions or failed to take action necessary for compliance with these provisions.
Answer “Yes” or “No:”
[[Image here]]
In its appellate brief, the City argued that it presented evidence that appellant received actual notice both before and after the demolition occurred. The majority, however, concludes, “Although the City presented evidence that TWE was notified of some of the permit provisions, it presented no evidence that TWE was ever informed of the ordinance provisions themselves before the building was demolished.”
The question is whether there is evidence that appellant was actually notified of the pertinent provisions of the ordinances, namely the requirement of Landmark Commission approval prior to demolition of a building within the West End Historic District. I would conclude that there is sufficient evidence of this fact. Exhibit 5 is a May 18, 2004 engagement letter from Michael R. Coker to R.L. Lemke about consulting services that Coker Company would be providing. The let *305 ter provides that Coker Company would represent Lemke or his company, Transcontinental Realty Investors, Inc., in preparing and processing a Landmark Commission application for a demolition project within the West End Historic District. The letter also provides that Coker Company would “[djetermine Options for Demolition in accordance with criteria established in the West End Historic District Ordinance and Chapter 51A of the Dallas City Code.” I would conclude that the letter sufficed to provide actual notice that demolition of the building without approval from the Landmark Commission would violate City of Dallas ordinances. The jury could find that notice to Lemke was notice to appellant, because there was evidence that Lemke was a vice president or some similar officer of appellant, as well as a vice president of Transcontinental Realty Investors.
Even if Coker’s letter to Lemke did not spell out all the provisions of the ordinances in question, the letter was sufficient to put Lemke on notice that the ordinances existed and enable him to discover the ordinances with the exercise of reasonable effort. “[0]ne who has knowledge of such facts as would cause a prudent man to make further inquiry[ ] is chargeable with notice of the facts which, by use of ordinary intelligence, he would have ascertained.” Flack v. First Nat’l Bank, 148 Tex. 495, 226 S.W.2d 628, 632 (Tex.1950); accord Welborn Mortg. Corp. v. Knowles, 851 S.W.2d 328, 331 (Tex.App.-Dallas 1993, writ denied). A reasonable jury could find that the letter to Lemke, which contained references to the “West End Historic District Ordinance” and the “[preparation of Landmark Commission applications,” was sufficient to put Lemke on notice that City ordinances required Landmark Commission approval for demolition of the building in question. Accordingly, I would conclude that the evidence was sufficient to support the element of actual notification of appellant.
Conclusion
For the foregoing reasons, I would grant the City of Dallas’s motion for rehearing and consider the other arguments raised by appellant in its appeal from the judgment in favor of the City of Dallas. Because the majority does not, I respectfully dissent from the denial of the City of Dallas’s motion for rehearing.